**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LOURDES HERNANDEZ-HERNANDEZ, ) <br> ) <br> Petitioner, ) <br> ) <br> v. ) <br> ) <br> ) <br> UNITED STATES OF AMERICA, ) <br> ) <br> Respondent. ) <br> ) | CV F 04-5305 AWI <br> (CR F 00-5409 AWI) <br><br> ORDER DENYING PETITIONER'S MOTION TO CORRECT, AMEND OR VACATE HER SENTENCE AND CLOSING THE CASE <br><br> (28 U.S.C. § 2255) |

**INTRODUCTION**

In this case, petitioner Lourdes Hernandez-Hernandez ("Petitioner") seeks relief under 28 U.S.C. section[1] 2255 from the sentence of 70 months that was imposed by this court on November 19, 2001, following his entry of a plea of guilty to one count of being a deported alien found in the United States in violation of 8 U.S.C., section 1326, and failure to appear in violation of 18 U.S.C., section 3146(a)(1) and (b)(1)(A)(i).

**FACTUAL AND PROCEDURAL HISTORY**

On June 24, 2002, Petitioner entered a plea of guilty to one count of being a deported alien found in the United States in violation of 8 U.S.C., section 1326, and failure to appear in

---

[1] References to section numbers hereinafter refer to sections of Title 28 of the United States Code unless otherwise specified.

violation of 18 U.S.C., section 3146(a)(1) and (b)(1)(A)(i).  Judgment was entered on June 26, 2002.  As part of her plea agreement, Petitioner waived all rights to appeal or collaterally attack her plea or conviction except that she retained the right to appeal the court's denial of her motion to dismiss pursuant to United States v. Arrieta, 224 F.3d 1076 (9th Cir. 2000) ("Arrieta").  Petitioner also retained the right to collaterally attack her sentence.  Petitioner timely filed a notice of appeal of the court's denial of Petitioner's motion to dismiss on July 1, 2002.  On February 24, 2003, the Ninth Circuit Court of Appeal issued a memorandum order affirming Petitioner's conviction.  Judgment was entered by the Ninth Circuit on March 21, 2003.  The instant motion to correct, set aside, or vacate the sentence pursuant to section 2255 was timely filed on February 19, 2004.

**LEGAL STANDARD**

Section 2255 provides, in pertinent part: "A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States ... may move the court which imposed the sentence to vacate, set aside or correct the sentence."  Under section 2255, "a district court must grant a hearing to determine the validity of a petition brought under that section, '[u]nless the motions and the files and records of the case conclusively show that the prisoner is entitled to no relief.' "  United States v. Blaylock, 20 F.3d 1458, 1465 (9th Cir.1994) (quoting 28 U.S.C. § 2255).  The court may deny a hearing if the movant's allegations, viewed against the record, fail to state a claim for relief or "are so palpably incredible or patently frivolous as to warrant summary dismissal." United States v. McMullen, 98 F.3d 1155, 1159 (9th Cir.1996) (internal quotations omitted), cert. denied, 520 U.S. 1269, 117 (1997).  To earn the right to a hearing, therefore, the movant must make specific factual allegations which, if true, would entitle him to relief.  Id.  Mere conclusory statements in a section 2255 motion are insufficient to require a hearing.  United States v. Hearst, 638 F.2d 1190, 1194 (9th Cir.1980), cert. denied, 451 U.S. 938 (1981).

**DISCUSSION**

The theory behind Petitioner's motion pursuant to Arrieta is that a defendant's conviction for reentry into the United States following deportation can be challenged collaterally by attacking the validity of the deportation proceeding, and consequently the validity of the deportation itself. Arrieta, 224 F.3d at 1079. Consistent with this theory, Petitioner's four alleged grounds for habeas relief challenge the validity of Petitioner's deportation proceeding prior to her deportation in 1997 on various constitutional grounds.

Petitioner's first and third grounds for relief, although presented with First, Fourth, and Sixth Amendment labels, allege essentially the same thing; violation of Petitioner's due process rights during INS proceedings during Petitioner's incarceration at the Chowchilla Women's Correctional Facility. Petitioner alleges she was seized without a proper warrant and subjected to a closed INS hearing without benefit of legal representation, and was never advised of her right to file for a waiver of deportation pursuant to 8 U.S.C., section 1182(h).

The court begins by noting that the removal process is a civil proceeding, not criminal. INS v. Lopez-Mendoza, 468 U.S. 1032, 1038 (1984). Consequently, Sixth Amendment rights to a jury trial and the related legal right to assistance of counsel do not apply, although similar rights may be provided by statute. Thus, to the extent Petitioner's claims are based on allegations of infringement of constitutionally guaranteed Sixth Amendment rights to public trial, jury trial, or assistance of counsel, those claims fail because the Sixth Amendment rights that are the basis of those claims do not apply in the case of a civil deportation proceeding.

The Ninth Circuit Court of Appeals, in its memorandum opinion, pointed out the government conceded Petitioner did suffer violation of her due process rights when she was ordered deported without notice that she might be eligible for waiver of deportation pursuant to 8 U.S.C., section 1182(h). United States v. Hernandez-Hernandez, No. 02-10351, 2003 WL 457237, at *205 (9th Cir. 2003) ("Hernandez-Hernandez"). However, as the court of appeals also pointed out, for a defendant to succeed in a collateral challenge to the underlying deportation

1  in a subsequent criminal proceeding, the defendant must "'be able to demonstrate that: (1) his
2  due process rights were violated by defects in his underlying deportation proceeding, and (2) he
3  suffered prejudice as a result of the defects.' [Citation.]" Arrieta, 224 F.3d at 1079 (quoting
4  United State v. Zarate-Martinez, 133 F.3d 1194, 1197 (9th Cir. 1998)); Hernandez-Hernandez,
5  2003 WL 457237 at *205-206. The appellate court's decision in Hernandez-Hernandez, while
6  recognizing the due process violation, affirmed the conviction based on Petitioner's failure to
7  demonstrate prejudice. Id. at *206.

8        Thus, for purposes of this discussion, this court accepts that Petitioner's due process
9  rights were violated, but pursuant to Hernandez-Hernandez and Arrieta, the court can grant no
10 relief absent a showing of prejudice. The due process violations alleged in Petitioner's first and
11 third grounds for relief go only to the issue of due process violation, and not to the issue of
12 prejudice. Consequently these allegations are not sufficient, without more, to warrant relief.

13       Pursuant to Arrieta, prejudice is shown by demonstrating that there is a plausible ground
14 for relief from deportation. As the appellate court in Hernandez-Hernandez observed, the
15 showing of a plausible ground for relief from deportation "requires 'extreme hardship,' or 'great
16 actual or prospective injury or extreme impact on the citizen family member, beyond the
17 common results of deportation.' [Citations.]" Hernandez-Hernandez, 2003 WL 457237, at *205
18 (quoting United States v. Muro-Inclan, 249 F.3d 1180, 1182 (9th Cir. 2001)). The factual basis
19 of extreme hardship alleged by Petitioner and addressed by the appellate court was the fact that
20 Petitioner is the mother of three grown children and one minor child who had relocated to
21 Mexico at the time of Petitioner's appeal. As the appellate court observed, Petitioner's "sole
22 argument was that separation from the children caused extreme hardship because [Petitioner's
23 children] were used to being close and she had a strong and loving relationship with her family."
24 The appellate court held these facts are insufficient to state a case for extreme hardship and only
25 represent the common results of deportation. Id. at *106.

26       Because the appellate court's decision in Hernandez-Hernandez, constitutes the law of the
27
28                                                   4

case for purposes of Petitioner's claim that her underlying deportation in 1997 was unlawful, Petitioner can only prevail if she can present additional evidence, not known or available at the time of her appeal, that would indicate extreme hardship. See United States v. Real Property Located at Incline Village, 958 F.Supp. 482, 487 (D. Nev. 1997) (law of the case doctrine requires identical legal or factual issue already decided by the same or superior court to be binding on the trial court unless substantially different evidence is presented, or there is an intervening change in controlling authority, or the prior determination was clearly erroneous).

Petitioner, in her fourth ground for relief reiterates the extreme hardship argument that was decided by the appellate court. Petitioner alleges substantially the same facts as were addressed by the appellate court except that Petitioner alleges this court as well as the appellate court erroneously determined Petitioner had three grown children and one minor child. Petitioner alleges that an examination of birth records would establish that the oldest of her children was fourteen years at the time of the deportation hearing.

A letter written to the court by Petitioner in advance of Petitioner's sentencing hearing, and filed on April 3, 2002, lists the ages of Petitioner's children as 22 years, 20 years, 18 years, and 8 years. Petitioner was deported in October 1997, so the ages of her children at the time of deportation would have been no younger than 17 years, 15 years, 13 years and 3 years, respectively. While the fact of Petitioner's children's ages may lend a little factual context to the appellate court's decision, there is nothing in the facts of the children's ages that would lead this court to depart from the law of the case as established by the appellate court. First, there is no reason to suppose the appellate court was unaware or uninformed of the ages of Petitioner's children at the time of her deportation. The appellate court's notation that three of the children were grown was made with the knowledge that the deportation had occurred a maximum of five years before, and that the children's ages would have been correspondingly less at the time of the deportation. Second, and more to the point, the appellate court's decision was based on an absence of facts to show that "beyond the usual difficulties of separation, [Petitioner's] children

5

are dependent on her support and presence in the United States." Hernandez-Hernandez, 2003 WL 457237, at *206.  Those facts are still lacking.

The appellate court invites comparison between the facts of this case and the factual case in Arrieta, 224 F.3d at 1082.  In Arrieta, the court found extreme hardship based on the defendant's ability to provide evidence that the defendant was responsible for the financial support of his siblings as well as for the support of his ailing mother, who was unable to travel to Mexico due to her poor health.  Here, in contrast, there is only evidence of an otherwise healthy and normal family that will have no more than the usual difficulties in the face of Petitioner's deportation.

This court finds Petitioner has failed to allege facts that are sufficiently different from the facts upon which the identical issue was decided at the appellate level to warrant departure from law of the case doctrine.  The court therefore concludes it is bound by the appellate court's conclusion that Petitioner did not suffer prejudice as a result of the due process violation she suffered at her deportation hearing.  Because there was no prejudice, this court concludes, as did the appellate court, that Petitioner's challenge to the validity of her deportation is without merit.

Petitioner also challenges the validity of her deportation on the grounds of double jeopardy and deportation in her case constituted cruel and unusual punishment in violation of the Eighth Amendment.  Rather than grapple with the issue of whether these arguments are waived, the court will simply note that deportation , being a civil proceeding, does not give rise to issues of double jeopardy or of punishment in violation of the Eighth Amendment.  LeTourneur v. INS, 538 F.2d 1368, 1370 (9th Cir. 1976).

Petitioner's motion pursuant to section 2255 is not a model of clarity and it is possible that she intends, in addition to the foregoing collateral challenge to the validity of her deportation, to challenge the sentence imposed by this court on the ground it cruel and unusual in violation of Petitioner's rights under the Eighth Amendment.  Briefly, a court "'[i]n determining whether a sentence violated the Eighth Amendment, must accord substantial deference to

1  legislative determinations of appropriate punishments.'"  <u>United States v. Barajas-Avalos</u>, 377
2  F.3d 1040, 1060 (9th Cir. 2004).

> The Eighth Amendment "forbids . . . extreme sentences that are 'grossly disproportionate' to the crime. [Citation].  This narrow proportionality principle applies to noncapital sentences. [Citation.] "[O]utside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare." [Citations.]

<u>Id.</u>

Petitioner's sentencing was carried out in strict accordance with the sentencing guidelines, applying facts that had been admitted or agreed to by Petitioner to calculate the base offense and adjusted offense level that was the basis of Petitioner's sentence.  Petitioner does not allege, and the facts do not demonstrate, that the court deviated in any way from the plea agreement or applied the sentencing guidelines in any way other than what was intended by Congress.  The court concludes there is no basis in this case for an Eighth Amendment claim of cruel or unusual punishment.

THEREFORE, in accordance with the foregoing discussion, Petitioner's motion to amend, vacate or set aside the sentence pursuant to 28 U.S.C., section 2255 is hereby DENIED.  The Clerk of the Court shall CLOSE the CASE.

IT IS SO ORDERED.

**Dated:   July 13, 2007**              /s/ Anthony W. Ishii
                                         UNITED STATES DISTRICT JUDGE

7